UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MARIA ESMERALDA ROSA LOPEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | |
| | ) | Case No. 1:26-cv-00112-SNLJ |
| SAM OLSEN, et al.,[1] | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM AND ORDER**

Petitioner Maria Esmeralda Rosa Lopez, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 seeking her immediate release. [Doc. 1]. The Court ordered the respondents to show cause why the writ should not be granted. [Doc. 7]. After reviewing the briefing, the Court finds that a hearing is unnecessary because this case presents a purely legal question based on undisputed facts. For the reasons set forth below, the Court denies the petition.

## I. BACKGROUND

Petitioner Maria Esmeralda Rosa Lopez is a native and citizen of El Salvador. [Docs. 1, 12-1, 17-1]. Petitioner entered the United States on or about December 14, 2021 at the age of 17. [*Id.*]. She was designated an unaccompanied minor (UAC) and placed in the custody

---

[1] Petitioner is detained at the Ste. Genevieve County Detention Center. She named Lt. Andrew Johnson, Jail Administrator of the detention center, as a respondent. The proper respondent is Sheriff Gary Stolzer, the Warden of the detention center. *See* 28 U.S.C. § 2242, ¶ 2. Respondents agree. [Doc. 12, fn. 1] ("The correct Respondent is technically Gary Stolzer, Sheriff and Warden of Saint Genevieve County Detention Center. In any case, because of intergovernmental service agreements, the undersigned AUSA represents Lt. Andrew Johnson and/or Sheriff Gary Stolzer solely regarding this current immigration habeas matter involving a person detained at his jail facility."). Therefore, the Court will order that "Gary Stolzer, Sheriff and Warden of Ste. Genevieve County Detention Center" be substituted for Lt. Andrew Johnson.

of the Office of Refugee Resettlement (ORR). [Doc. 1]. On December 29, 2021, petitioner was released from the custody of the ORR to her sponsor.[2] [Docs 1, 12-1]. On July 9, 2025, the U.S. Citizenship and Immigration Services (USCIS) granted petitioner Special Immigrant Juvenile Status (SIJS or SIJ status). [Docs. 1, 17-2, 17-4]. Her priority date is February 25, 2025. [Docs. 1, 17-2]. Additionally, petitioner has a pending I-589 asylum application submitted on March 21, 2025, and an approved I-765[3] until October 24, 2030. [Doc. 17-4].

On August 21, 2025 and January 12, 2026, petitioner attended regularly scheduled U.S. Immigration and Customs Enforcement (ICE) check-in appointments. [Doc. 1, ¶ 22]. At the January 12, 2026 appointment, ICE issued petitioner an Order of Release on Recognizance. [*Id.*]. On May 18, 2026, petitioner attended a regularly scheduled ICE check-in. At that time, ICE detained petitioner and issued a Warrant for Arrest of Alien. [Doc. 12.1]. Additionally, removal proceedings were initiated against petitioner, charging that she is removable pursuant to:

> 212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.
>
> 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who at the time of application for admission, is not in possession of a valid unexpired immigrant visa reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

---

[2] The ORR Verification of Release shows that petitioner's brother was her sponsor. [Doc. 12-1].

[3] Form I-765 is filed with the USCIS to request an Employment Authorization Document (EAD). An approved EAD allows eligible individuals to legally work in the United States for a limited period of time. *See* https://www.uscis.gov/i-765.

[Docs. 12-1, 17-1]. Petitioner is currently detained at the Ste Genevieve County Detention Center.

## II. DISCUSSION

"Writs of habeas corpus may be granted by...the district courts...within their respective jurisdictions." 28 U.S.C. § 2241(a). "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). A district court may grant a writ of habeas corpus if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). Federal courts have jurisdiction to hear habeas challenges to the lawfulness of immigration-related detentions. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Petitioner claims that her arrest and detention violate the Fourth and Fifth Amendments, as well as the Immigration and Nationality Act (INA) and the Administrative Procedures Act (APA).[4] Each of her claims relies, at least in part, on her UAC/SIJ status. Respondents maintain that petitioner is properly detained without the possibility of bond under 8 U.S.C. § 1225(b)(2)(A) and that rulings of this Court, the Eighth Circuit, and the Supreme Court support her continued detention.

### A. Counts 1, 2, and 4 – Fifth Amendment Due Process and the INA

Petitioner claims that she does not pose a flight risk nor a threat to the community, and therefore, the government lacks a legitimate interest in her detention. She further argues

[4] The Petition does not mention whether administrative exhaustion occurred. However, exhaustion is excusable—and, indeed, unnecessary—where the dispute presents a purely legal question requiring no further factual or procedural development. *See Cutiopala v. Noem*, 1:26-cv-00211-MAL, 2026 WL 113567 at *1 (E.D. Mo. Jan. 15, 2026) (citing *State of Mo. v. Bowen*, 813 F.2d 684, 871 (8th Cir. 1987).

that mandatory detention under § 1225(b)(2)(A) does not apply to her because of her UAC and SIJ status. She also contends that her UAC and SIJ status prohibit her removal, rendering her detention meaningless. For these reasons, she maintains that her detention is unlawful and violates the Fifth Amendment Due Process Clause.

The Eighth Circuit's decision in *Avila v. Bondi* forecloses any challenge to the government's authority to detain petitioner under § 1225(b)(2)(A). *Avila v. Bondi*, 170 F.4th 1128, 1133–38 (8th Cir. 2026) (holding that any noncitizen who has not lawfully entered into the United States "after inspection and authorization by an immigration officer"—falls under § 1225(b)(2)(A)'s mandatory detention requirement). Further, petitioner's due process claims are foreclosed by rulings from this Court, the Eighth Circuit, and the Supreme Court. *See Demore v. Kim*, 538 U.S. 510 (2003) (holding that mandatory detention during removal proceedings is a constitutionally permissible part of that process); *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024) (holding that the government can detain a noncitizen for as long as deportation proceedings are still pending); *Lugo-Solet v. Mullin*, 1:26-cv-00052-ZMB, 2026 WL 1162233 (E.D. Mo. Apr. 29, 2026) (collecting cases) (denying habeas relief post-*Avila* and finding, under *Banyee*, petitioner's continued detention during active removal proceedings did not violate due process).[5]

[5] The Court acknowledges that there is a split among the Judges in this district on the issue of whether continued detention under § 1225(b)(2)(A) violates due process. The majority of the rulings in this district have held that there is no due process violation. *See Suarez v. Noem*, 1:25-cv-00202-JMD, 2025 WL 3312168 (E.D. Mo. Nov. 28, 2025), *Cutiopala, v. Noem,*, 1:25-cv-00211-MAL, 2026 WL 113567 (E.D. Mo. Jan. 15, 2026), *Negrete Ramirez v. Noem*, 1:25-cv-00206-CMS, 2026 WL 251725 (E.D. Mo. Jan. 30, 2026), *Bushuev v. Immigration & Customs Enforcement - Enforcement & Removal Operations*, 1:25-cv-213-MAL, 2026 WL 352873 (E.D. Mo. Feb. 9, 2026), *Pineda v. Noem*, 1:26-cv-00016-CMS, 2026 WL 496680 (E.D. Mo. Feb. 23, 2026), *Guillen v. Johnson*, 1:26-cv-10-CMS, 2026 WL 601881 (E.D. Mo. Mar. 4, 2026), *Lugo-Solet v. Mullin*, 1:26-cv-00052-ZMB, 2026 WL 1162233 (E.D. Mo. Apr. 29, 2026), *Camba v.*

Further, "[t]he fact that petitioner has been given [SIJ] status has no effect on ICE's statutory and regulatory authority to detain [her]." *Vasquez v. Moniz*, 788 F. Supp. 3d 177, 181 (D. Mass. 2025). "SIJ status does not take [a noncitizen] outside the plain meaning of [§] 1225(b)(2)(A)." *Sebastian v. Olson*, 2:26-cv-00324-JRO-MKK, 2026 WL 1683618, at *8 (S.D. Ind. June 10, 2026). "SIJ status allows those who entered the country as minors without inspection and admission or parole to apply for an adjustment of their immigration status to lawful permanent residency." *Id.*; 8 U.S.C. § 1153(b)(4)). However, "SIJ status does not grant [petitioner] any immigration status and does not guarantee [s]he will subsequently be found eligible for a visa or admission to the United States." *Cervantes Merino v. Whitmore*, C26-120-LTS-MAR, 2026 WL 1906670, at *2 (N.D. Iowa July 2, 2026). "Rather, this designation makes [her] eligible to apply for and, in the Government's discretion, receive an immigrant visa when one is available." *Id.* (citing 8 U.S.C. § 1255(a)). Although adjustment of status is generally only available to a noncitizen "who was inspected and admitted or paroled into the United States," 8 U.S.C. § 1255(a), Congress provided that noncitizens with SIJ status "shall be deemed, for purposes of [adjustment of status] to have been paroled into the United States," § 1255(h)(1). But "[t]he plain language of [§ 1255(h)]

---

*Warden, Ste. Genevieve County Detention Center*, 1:26-cv-00103-MTS, 2026 WL1351225 (E.D. Mo. May 14, 2026), *Sangwan v. Warden*, 1:26-cv-71-MAL, 2026 WL 1469187 (E.D. Mo. May 26, 2026), *Moran v. Warden, Ste. Genevieve County Detention Center*, 1:26-cv-00083-CMS, 2026 WL 1693766 (E.D. Mo. June 11, 2026), *Guevara-Hernandez v. Blanche*, 1:26-cv-59-ZMB, 2026 WL 1728803 (E.D. Mo. June 15, 2026); *Perez by & through her next friend Bracho v. Warden/administrator, Ste. Genevieve Cnty. Det. Ctr.*, 1:26-cv-149-ZMB, 2026 WL 1853286 (E.D. Mo. June 26, 2026), *Diaz Ponce v. Olson*, 1:26-cv-170-MAL, 2026 WL 2058504 (E.D. Mo. July 16, 2026). For rulings that have held that continued detention without a bond hearing violates due process, *see Mekonnen v. Stolzer,* 1:26-cv-00122-AGF, 2026 WL 2029972 (E.D. Mo. July 14, 2026), *Leal v. Stolzer*, 1:26-cv-00157-RWS, 2026 WL 2194741 (E.D. Mo. July 30, 2026), and *Paez-Herrera v. Stolzer*, 1:26-cv-00078-AGF, 2026 WL 2198535 (E.D. Mo. July 30, 2026).

applies the 'deemed to have been paroled' language *only* to [§ 1255(a)] and no other provision of the INA." *Cortez-Amador v. Attorney General*, 66 F.4th 429, 433 (3rd Cir. 2023).

Petitioner also argues that an unaccompanied child (UAC) who enters the United States and is released from government custody to a guardian cannot be detained under § 1225(b)(2)(A). She claims that UAC detention is governed by § 1232(c)(2), which requires UACs in ORR custody, including those who turn 18 and age out of ORR custody, to be placed in the "least restrictive setting available." Although petitioner was initially placed in ORR custody, she was released from federal custody to her brother. [Doc. 1, ¶¶, 19, 20; Doc. 12-1, p. 6]. Further, there is no indication that when she reached age 18, she was in ORR custody and transferred to DHS custody. Section 1232(c)(2)(B) only applies to UACs transferred to the custody of DHS at age 18. *See Hernandez v. Olson*, 25-cv-1670-BHL, 2026 WL 161509, at *7 (E.D. Wis. Jan. 21, 2026) (holding § 1232(c)(2)(B) did not apply to former UAC who was released to the custody of a family member and never transferred to the custody of DHS).

Moreover, even if petitioner was in DHS custody, "[§] 1232(c)(2)(B)'s 'age-out' provision does not create a permanent right to an individualized bond redetermination whenever an alien who was formerly a UAC is arrested by ICE well after reaching the age of majority." *Martinez v. Easterwood*, 4:26-cv-3182, 2026 WL 2111176, at *17 (D. Neb. July 22, 2026) (quoting *Sidhant v. Swearingen*, 2:26-cv-00281-JRO-MKK, 2026 WL 1424982, at *9 (S.D. Ind. May 20, 2026)); *see also Hernandez v. Olson*, 25-cv-1670-BHL, 2026 WL 161509, at *7 (E.D. Wis. Jan. 21, 2026) (holding § 1232(c)(2)(B) did not apply to former UAC who was released to the custody of a family member and never transferred to the

custody of DHS). "Rather, its plain terms apply only during the critical time period when UACs become adults and are 'transferred' from ORR to the 'custody' of DHS." *Sidhant*, 2026 WL 1424982, at *9. Because there is nothing in § 1232 to suggest that its statutory protections still apply to petitioner, there is no basis to hold that her former UAC status precludes mandatory detention under § 1225(b)(2)(A).

Finally, petitioner argues that until there is an adjudication of an adjustment of status application—which she has yet to submit due to the visa backlog—she is subject to indefinite detention. She contends this potentially indefinite detention is unconstitutional under *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the individuals challenged their detention following final deportation orders because their removal was "no longer practically attainable." *Id.* at 690. As a result, they were subject to "indefinite" and "potentially permanent" detention. *Id.* at 690-91. The *Zadvydas* Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Petitioner's circumstances differ markedly from those in *Zadvydas*. She is not subject to a final removal order but is instead in formal, active removal proceedings, during which she can present any claims she may have to avoid removal. Any suggestion that she is subject to indefinite detention is purely speculative, as there is no evidence before this Court that her removal is "no longer practically attainable," as was the case in *Zadvydas*. Rather, according to *Demore* and *Banyee*, she may be detained for as long as deportation proceedings remain pending.

**B. Count 3 – Fourth Amendment**

To the extent petitioner claims that her arrest and detention must comply with § 1226,

the argument fails because, under Avila, she is subject to mandatory detention under § 1225(b)(2)(A). Accordingly, compliance with § 1226 was not required.

Petitioner also claims that her arrest was made without probable cause to believe she was a flight risk. She argues that, because she has SIJ status, a stable home address, has been in the United States for over four years, has built strong ties to the community, and has attended multiple ICE check-ins, there was no probable cause to believe she was likely to escape before a warrant could be obtained. The Court finds that there was probable cause to arrest and detain her, and, as a result, no violation of the Fourth Amendment occurred. *See Sangwan v. Warden*, 1:26-cv-71-MAL, 2026 WL 1469187 (E.D. Mo. May 26, 2026) (holding ICE had probable cause to arrest Sangwan because he was a noncitizen present in the United States without inspection and thus subject to mandatory detention); *Zhuang v. Bondi*, 1:25-cv-00201-CMS, 2026 WL 352872 (E.D. Mo. Feb. 9, 2026) (holding warrantless arrest lawful where the arresting agent had reason to believe that Zhuang was in violation of a law or regulation).

Finally, the Court notes that a warrant was served on petitioner on May 18, 2026. [Doc. 12, p. 88-90]. The stated probable cause for the warrant included "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject lacks immigration status or notwithstanding such status is removable under U.S. immigration law." [*Id.*].

**C. Count 5 – APA**

Petitioner's APA claim fails because, as the Eighth Circuit held in *Avila*, § 1225(b)(2)(A) is controlling and mandates petitioner's detention during removal proceedings. *See Perez-Sanchez v. Blanche,* 3:26-cv-01043-LS, 2026 WL 1389348, at *2

(W.D. Tex. May 18, 2026) (holding an APA claim fails where § 1225(b)(2)(A) mandates detention during removal proceedings).

## III. CONCLUSION

For the foregoing reasons, the Court concludes that petitioner's mandatory detention under § 1252(b)(2)(A) is lawful.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's motion for hearing [Doc. 21] is **DENIED**.

**IT IS FURTHER ORDERED** that "Gary Stolzer, Sheriff and Warden of Ste. Genevieve County Detention Center" shall be **SUBSTITUTED** for Lt. Andrew Johnson.

**SO ORDERED** this 14th day of August, 2026.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE